**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| M. LEE ARNOLD, Derivatively on Behalf of ) | |
| CHESAPEAKE ENERGY CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CIV-11-986-D |
| ) | |
| AUBREY K. McCLENDON, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER**

Before the Court is the motion to dismiss [Doc. No. 25] of Defendant Chesapeake Energy

Corporation ("Chesapeake"). Chesapeake seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and

(6), arguing Plaintiff M. Lee Arnold ("Mr. Arnold") lacks standing to pursue this shareholder

derivative action on behalf of Chesapeake Energy Corporation ("Chesapeake"), and has failed to

allege facts sufficient to support the essential elements of a shareholder derivative claim. Mr.

Arnold has responded, and Chesapeake filed a reply.

I. Background:

Mr. Arnold, a Chesapeake shareholder, brought this action to assert derivative claims based

on alleged violations of the federal securities laws in connection with Chesapeake's July 2008 stock

offering. He alleges that the registration statement and related materials in connection with that

offering have material omissions. Mr. Arnold does not dispute that his claims in this lawsuit are

essentially the same as those asserted in a class action suit pending in this Court, *United Food and

Commercial Workers' Union v. Chesapeake Energy, et al.,* CIV-09-1114-D (the "Class Action").

Prior to the September 6, 2011 filing of this lawsuit, another Chesapeake shareholder brought

a derivative action against the Chesapeake board of directors (the "Directors"), alleging breaches

of fiduciary duty based on the same claims asserted in the Class Action.  That action, *Lutzker v. Chesapeake Energy Corp., et al.,* CJ-09-2329, is pending in the District Court of Oklahoma County. However, the parties voluntarily stayed that case pending the outcome of the Class Action.[1]

In its motion, Chesapeake argues Mr. Arnold lacks standing to pursue the instant litigation because he cannot show the Directors refused his request that they pursue the litigation on behalf of the corporation.

## II. Standards governing the sufficiency of allegations in a shareholder derivative action:

Chesapeake seeks dismissal pursuant to both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Its Rule 12(b)(1) argument seeking dismissal for lack of subject matter jurisdiction is based on the contention that Mr. Arnold lacks standing to pursue this action.  As a general rule, the "'proper procedural route' for standing challenges is a motion under rule 12(b)(1)."  *Kautz v. Sugarman*, 2011 WL 1330676, at *3 (S.D.N.Y. Mar. 31, 2011) (unpublished opinion) (quoting *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates,* 436 F.3d 82, 89 n. 6 (2d Cir. 2006)).  Where standing is challenged in a shareholder derivative action, however, the "case law is unclear" as to whether the issue is analyzed under Rule 12(b)(1) or 12(b)(6).  *Winn v. Schafer,* 499 F. Supp. 2d 390, 395

---

[1]Chesapeake notes that two other shareholders separately filed derivative actions in the District Court of Oklahoma County.  In those lawsuits, *In re Chesapeake Shareholder Litigation,* No. CJ-09-3983, and *Louisiana Municipal Police Employees' Union v. Chesapeake,* No. CJ-09-2870, the plaintiffs assert breaches of fiduciary duty and related claims based on the 2008 employment compensation paid to Defendant Aubrey K. McClendon. On November 1, 2011, these state cases were stayed pursuant to an order preliminarily approving a settlement of both cases.  Mr. Arnold has also filed another derivative action, Case No. CIV-11-985-M, which alleges, *inter alia,* a breach of fiduciary duty in connection with Defendant McClendon's 2008 employment compensation.   In a December 23, 2011 Order [Doc. No. 39], Mr. Arnold's lawsuit was consolidated with another shareholder derivative action also based on Mr. McClendon's 2008 compensation, *Clem v. Aubrey K. McClendon, et al.,* CIV–11-997-M.  By Order of March 14, 2012 [Doc. No. 43], Judge Vicki Miles-LaGrange granted the parties' joint motion to stay the consolidated proceedings pending the resolution by the Oklahoma Supreme Court of an appeal of the District Court's approval of the settlement in the two state court cases.  The stay of the consolidated actions remains in effect as of the date of this Order.

(S.D.N.Y. 2007). Although the Tenth Circuit Court of Appeals has not expressly addressed this issue, most courts appear to conclude the issue of standing in a shareholder derivative action "can be raised on either a Rule 12(b)(1) or a Rule 12(b)(6) motion." *San Diego County Employees Retirement Ass'n v. Maounis,* 749 F. Supp. 2d 104, 125 n. 6 (S.D.N.Y. 2010) (citations omitted). Defendants challenging standing often raise the issue in the manner utilized by Chesapeake in this case, and assert both Rule 12(b)(1) and 12(b)(6) motions. *Id.; Winn,* 499 F. Supp. 2d at 395. However, the courts generally analyze the sufficiency of the allegations according to Rule 12(b)(6) and Rule 23.1 rather than Rule 12(b)(1). *See In Re Textron, Inc.,* 811 F. Supp. 2d 564, 571 (D. R.I. 2011); *Oakland County Employees' Retirement System v. Massaro,* 772 F. Supp. 2d 973, 976 (N.D. Ill. 2011); *San Diego County,* 749 F. Supp. 2d at 125 n. 6; *Richelson v. Yost,* 738 F. Supp. 2d 589, 595 (E.D. Pa. 2010).

Having reviewed the relevant decisions as well as the parties' briefs in this case, the Court concludes that the instant motion should be analyzed according to the standards applicable to Rule 12(b)(6) and Rule 23.1.

A.  Standards governing Rule 12(b)(6) motions:

To avoid dismissal pursuant to Rule 12(b)(6), a complaint "must contain enough factual allegations 'to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008); *VanZandt v. Oklahoma Dept. of Human Services*, 276 F. App'x 843, 846 (10th Cir. 2008) (unpublished opinion). To state a plausible claim, "the Plaintiff has the burden to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *VanZandt*, 276 F. App'x at 846 (quoting *Robbins*, 519 F. 3d at 1247.) "Factual allegations must be enough to raise a right

to relief above the speculative level." *Twombly*, 550 U. S. at 555. Thus, plaintiffs must allege

sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* at 570.

B.  Standards governing application of Rule 23.1:

Assessing the sufficiency of the allegations in a shareholder derivative complaint also

requires application of the pleading requirements of Fed. R. Civ. P. 23.1. "Shareholder derivative

suits must satisfy both the general pleading standards of Rule 12(b)(6) and the particular

requirements set forth in Rule 23.1." *Kautz v. Sugarman*, 2011 WL 1330676, at *3 (S.D.N.Y. Mar.

31, 2011) (unpublished opinion) (citing *Halebian v. Berv*, 590 F.3d 195, 204 (2d Cir.2009)). Rule

23.1 prescribes the pleading requirements for a shareholder derivative claim. Fed. R. Civ. P.

23.1(b). In addition to requiring a verified complaint, the Rule dictates that certain allegations must

be included. Accordingly, the Complaint must:

> 1) allege that the plaintiff was a shareholder or member at the time of the transaction
> complained of, or that the plaintiff's share or membership later devolved on it by
> operation of law;
>
> (2) allege that the action is not a collusive one to confer jurisdiction that the court
> would otherwise lack; and
>
> (3) state with particularity:
>
>> (A) any effort by the plaintiff to obtain the desired action from the
>> directors or comparable authority and, if necessary, from the
>> shareholders or members; and
>> (B) the reasons for not obtaining the action or not making the effort.

Fed. R. Civ. P. 23.1(b)(1)-(3).

"[U]nder Federal Rule of Civil Procedure 23.1, a plaintiff bringing a shareholders' derivative

suit must state with particularity that the plaintiff has made a demand on the board of directors to

take the requested action or the reasons for not making the demand. Fed.R.Civ.P. 23.1(b)." *In re*

*American International Group, Inc. Derivative Litigation,* 700 F. Supp. 2d 419, 430 (S.D.N.Y. 2010) "Rule 23.1 is not satisfied by conclusory statements or mere notice pleading." *Brehm v. Eisner*, 746 A.2d 244, 254 (Del.2000). "'Because Rule 23.1 requires that plaintiffs make particularized allegations, it imposes a pleading standard higher than the normal standard applicable to the analysis of a pleading challenged under Rule 12(b)(6).'" *In re American International,* 700 F. Supp. 2d at 430 (quoting *Kernaghan v. Franklin*, 2008 WL 4450268, at *3 (S.D.N.Y. Sept. 29, 2008)); *see also In re Adolor Corp. Derivative Litigation,* 2009 WL 1325738, at *5 (E.D. Pa. 2009) (unpublished opinion) (Rule 23.1 "imposes a heightened pleading standard for shareholder derivative suits").

III.  Application:

In its motion, Chesapeake acknowledges the Complaint satisfies Rule 23.1 to the extent it is properly verified, sufficiently alleges Mr. Arnold is a Chesapeake shareholder, and alleges the absence of collusion to confer jurisdiction.  Chesapeake argues, however, that the Complaint is deficient because it fails to state with particularity that Mr. Arnold made a demand upon the Chesapeake Directors prior to filing suit, and the Directors refused to initiate the litigation he demanded.  Chesapeake further argues that Mr. Arnold's allegations and the exhibits attached to, and incorporated by reference in, the Complaint show the Directors did not refuse his demand to pursue litigation on behalf of the corporation. Chesapeake contends the exhibits show the Directors informed Mr. Arnold that, because his proposed claims are the same as those asserted in the Class Action, they would determine whether to pursue a lawsuit after certain matters were adjudicated in the Class Action.   Mr. Arnold argues the Directors' response is equivalent to a refusal to pursue the litigation, thus satisfying the demand prerequisite to a derivative action.

A derivative action "is a litigation device that enables shareholders to sue on behalf of the corporation where those in control of the company refuse or fail to assert a claim belonging to it." *Alabama By-Products Corp. v. Cede & Co.*, 657 A.2d 254, 264-65 (Del. 1995) (citing *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. Super. 1984), *overruled sub nom. on other grounds, Brehm v. Eisner*, 746 A.2d 244, 253 (Del. 2000)).[2] There are two aspects to a derivative action: (1) an effort by the shareholders against the corporation to compel it to sue; and (2) the underlying claim by the corporation, asserted by shareholders on its behalf, against those who caused the corporation legal injury. *Aronson*, 473 A.2d at 811.

Because a plaintiff in a derivative action is asserting a claim on behalf of the corporation, he must establish "standing to maintain a derivative shareholder's suit" on the corporation's behalf. *Alabama By-Products,* 657 A. 2d at 265. To do so, he must first make a demand on the corporation's directors to bring the suit at issue, and he must show that the directors refused his demand. The demand requirement "affords the directors an opportunity to exercise their reasonable business judgment" to determine whether the best interests of the corporation are served by the directors' pursuit of the litigation or by foregoing their right to sue and allowing a derivative action to be pursued. *Daily Income Fund v. Fox,* 464 U.S. 523, 532-33 (1984). "Until the board is afforded such a reasonable opportunity to respond, a shareholder making the demand has no standing to commence derivative litigation on the corporation's behalf." *Abbey v. Computer & Communications Technology Corp.*, 457 A. 2d 368, 371 (Del. Ch. 1983); *Nussbacher v. Continental*

---

[2]The parties agree that Oklahoma courts consider decisions of the Delaware courts persuasive authority on issues related to the construction of the Oklahoma General Corporation Act because it is based on Delaware's Corporations Act. *See Beard v. Love,* 173 P.3d 796, 802 (Okla. Civ. App. 2007).

*Illinois Bank & Trust Co.*, 518 F.2d 873 (7th Cir.1975), *cert. denied*, 42 U.S. 928 (1976); *Mills v.*

*Esmark*, *Inc*., 91 F.R.D. 70 (N.D. Ill.1981); *Siegal v. Merrick*, 84 F.R.D. 106 (S.D.N.Y.1979)).

"The demand requirements of Rule 23.1 are predicated on the application of the business

judgment rule in the context of a board's exercise of its managerial power over a derivative claim."

*In re Price/Costco Shareholder Litigation,* 1995 WL 786631, at *3 (W.D. Wash. Oct. 30, 1995)

(unpublished opinion) (citing *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991)). "The business

judgment rule is 'a presumption that in making a business decision, not involving self-interest, the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that the

action taken was in the best interests of the company.'" *Id.* (quoting *Spiegel v. Buntrock*, 571 A.2d

767, 774 (Del. 1990)). "If a board's decision can be attributed to any rational business purpose, a

court will not substitute its judgment for that of the board." *In re Price/Costco,* 1995 WL 786631,

at* 3 (citing *Levine*, 591 A.2d at 207).

In this case, Mr. Arnold alleges that he made demand on the Chesapeake Directors and that

they refused to take action. Complaint at ¶¶ 105; 126-131. In support of this allegation, he attaches

to the Complaint correspondence between his attorney and the Directors.[3]  Complaint, Exs. 1-10.

Exhibit 1 is a March 20, 2009 letter from Mr. Arnold's attorney making demand that the Directors

file suit on behalf of the corporation to assert the claims raised in the February 26, 2009 class action

lawsuit based on alleged material omissions in the July 2008 stock offering.  Exhibit 2 is an undated

---

[3]Because the exhibits are expressly referenced and incorporated in the Complaint and constitute an integral part of Mr. Arnold's allegations, they may be considered in the Court's ruling on the motion without the need to convert it to a motion for summary judgment. *Alvarado v. KOB-TV, L.L.C.* 493 F.3d 1210, 1215-1216 (10th Cir.2007). *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir.1997).

letter from Jennifer M. Grigsby, Senior Vice President, Treasure and Corporate Secretary of Chesapeake.  Ms. Grigsby acknowledges receipt of Mr. Arnold's March 20 letter and advises it has been transmitted to the Directors for consideration.

Exhibit 3 to the Complaint is a July 24, 2009 letter from Mr. Arnold's attorney to Ms. Grigsby in which he acknowledges receipt of her letter, but states the Directors have not responded to his demand.  In addition, Mr. Arnold's attorney asserts a new demand upon the Directors that they initiate litigation regarding Mr. McClendon's 2008 compensation increase and related matters.

Ms. Grigsby's August 11, 2009 response is submitted as Exhibit 4.  She acknowledges receipt of the July 24 letter and advises that the Directors considered Mr. Arnold's first demand at their June meeting.   She states that the Directors decided at that time to postpone a decision on Mr. Arnold's demand until receipt of a ruling in the pending motion to dismiss the Class Action suit.

Exhibit 5 to the Complaint is a November 14, 2009 letter from Ms. Grigsby to Mr. Arnold's attorney in which she notes the Class Action suit had been transferred from the Southern District of New York to this Court, and reiterates the Directors' determination to defer a decision on Mr. Arnold's demand for litigation until receipt of a ruling on the motion to dismiss the Class Action. She also advises the Directors considered Mr. Arnold's subsequent demand for litigation regarding Mr. McClendon's 2008 compensation and states they also decided to defer a decision on that demand.  Ms. Grigsby notes that the Directors are aware of the statute of limitations with regard to these issues, and states that, if necessary, tolling agreements will be provided.

In the December 2, 2009 letter submitted as Exhibit 6, Mr. Arnold's attorney replied to Ms. Grigsby, acknowledging receipt of her August and November letters.  He reiterated Mr. Arnold's initial demand for litigation, expressed disagreement with the Directors' view that they should defer

action until a ruling on the pending motion to dismiss the Class Action, and stated his view that the Directors' position of "neutrality" could be seen as tacit approval of Mr. Arnold's right to pursue a derivative action.  He also asked for detail regarding the possibility of tolling agreements.

Exhibit 7 to the Complaint is Ms. Grigsby's April 15, 2010 letter advising the motion to dismiss the Class Action case had been denied, but indicating the Directors anticipated an appeal of that ruling, and decided to await an appellate decision before considering pursuit of litigation.

Exhibit 8 is a September 15, 2010 letter to Ms. Grigsby from Mr. Arnold's attorney in which he noted the denial of the motion to dismiss the Class Action lawsuit, and requested a "prompt response" from the directors to Mr. Arnold's initial demand request.  Counsel sought a decision by September 24, 2010.

Ms. Grigsby's September 15 response is submitted as Exhibit 9.  She states counsel's request has been forwarded to the Directors for consideration at their September 23, 2010 meeting.  Exhibit 10 to the Complaint is an October 13, 2010 letter from Ms. Grigsby to Mr. Arnold's attorney advising the Directors voted at their September 23 meeting to defer action on Mr. Arnold's demand pending the resolution of the Class Action lawsuit.  Ms. Grigsby also states there are no current statute of limitations issues, and no need to consider tolling agreements at that time.

In the Complaint, Mr. Arnold alleges facts summarizing the foregoing communications. Complaint ¶¶ 105-117.  He also alleges that it appears the Directors did not conduct an investigation of the allegations he detailed in his demand letter, despite the passage of 29 months prior to the filing of the Complaint.  *Id.* at ¶¶ 123-124; 131.

Mr. Arnold alleges in detail that the Directors' response to his initial demand constitute a tacit refusal to pursue the litigation he requested.  He alleges in detail contentions that the Directors'

failure to take action constitutes approval of his intent to pursue litigation on behalf of Chesapeake or a waiver of its right to pursue the litigation.  Complaint at ¶¶ 130-132.

The Court concludes that Mr. Arnold's detailed allegations are sufficient to satisfy the particularized pleading requirements of Rule 23.1 with regard to his demand that the Directors initiate litigation to assert the claims he enumerates in the Complaint.  In its motion, Chesapeake argues that the Directors' response to Mr. Arnold's demand constitute a reasonable response and exercise of the business judgment rule, which must be accepted by the Court in deference to the corporation's right to manage its own affairs.  *See, e.g., Levine,* 591 A. 2d at 205.  Chesapeake then argues that, as a result, its response to Mr. Arnold cannot be construed as a refusal to pursue the litigation he demanded.   Mr. Arnold responds that a corporate board of directors' failure to timely respond or its delayed response can be construed as a refusal.

Both parties cite decisions which appear to support these contrary arguments.  The Court's initial focus must be whether Mr. Arnold's Complaint satisfies the applicable pleading standards. The Court concludes that it does.  Regarding the application of the business judgment rule, having reviewed the relevant decisions, the Court concludes that the sufficiency of Chesapeake's response to Mr. Arnold's demand constitutes a factual question which cannot properly be resolved in a motion to dismiss.   While Chesapeake is correct in its explanation of the business judgment rule, the application of the rule in this case does not necessarily dictate dismissal of the Complaint.   The question raised is whether the Directors' actions in response to Mr. Arnold's letter amount to a refusal of his demand.   The Court finds that his allegations are sufficient to create a factual dispute regarding that issue.   While the Court may ultimately conclude that the Directors' response is

sufficient and this action cannot be pursued derivatively, it cannot make that determination on the basis of the pleadings before it at this time.

IV.  Conclusion:

For the foregoing reasons, the motion to dismiss [Doc. No. 25] is DENIED.  Chesapeake is directed to file its answer to the Complaint within the time period prescribed by the Federal Rules of Civil Procedure.

IT IS SO ORDERED this 28th day of September, 2012.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE